687 F.2d 27
 111 L.R.R.M. (BNA) 2307, 95 Lab.Cas. P 13,787,
3 Employee Benefits Ca 1913
 ADAMS, Robert J., et al.
v.
GOULD, INC. and First Trust Company of St. Paul, Minnesota,
Individually and as Trustee of the Gould Inc.
Pension Trust For Hourly Employees and
Pension Benefit Guaranty Corporation.
Appeal of GOULD, INC. and First Trust Company of St. Paul, Minnesota.
 No. 82-1118.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 4, 1982.
Decided Sept. 2, 1982.
Rehearing and Rehearing In Banc Denied Sept. 27, 1982.
 
 John Markle, Jr., Mark M. Wilcox, Drinker, Biddle & Reath, Philadelphia, Pa., Richard H. Kyle, Jr., Briggs & Morgan, St. Paul, Minn., Robert E. Mann (argued), Mark A. Lies, II, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for appellants.
 Richard A. Ash (argued), Lyman & Ash, Marvin F. Galfand, Galfand & Galfand, Philadelphia, Pa., for appellees.
 Before ALDISERT and WEIS, Circuit Judges, and RE*, Chief Judge.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 The sole question presented for resolution in this interlocutory appeal certified under 28 U.S.C. § 1292(b) is whether certain individual employees, plaintiffs below, are bound by the results of an arbitration between their employer and their union and thereby barred from bringing their complaint in federal court. The district court determined they were not and denied defendants' motion for summary judgment. Defendants obtained the district court's certification of the question, however, and we allowed the appeal. We reverse.
 
 I.
 
 2
 In 1962, appellant Gould, Inc. purchased the Wilkening Manufacturing Co. piston ring manufacturing plant, whose employees were represented by Local 416 of the United Auto Workers. The union and Gould entered into successive collective bargaining agreements as well as a pension agreement whose trust assets are administered by appellant First Trust Co. In 1973, because of its "antiquated plant, ... failing product line, intense competition, and a declining market share," Gould announced its intention to terminate operations at the plant and to release all of the employees. Gould and UAW representatives met to discuss the phase-out of operations, including the ramifications for the pension plan. Determining that the plan's assets were actuarially insufficient to provide full benefit payments to all claimants and retirees, the union demanded that Gould fully fund the plan. When Gould refused, the union filed a grievance under Article XVII ("Grievance Procedure") of the collective bargaining agreement, even though Article XII ("Pension Plan") of the same agreement established procedures for the resolution of pension disputes.
 
 
 3
 Unable to resolve the dispute, Gould and the union submitted it to a single arbitrator pursuant to the final step of Article XVII. The union again demanded that Gould fully fund the plan or, alternatively, fund it on a sound actuarial basis. Gould argued that it had met its contractual obligations. Professor John Perry Horlacher, Chairman of the University of Pennsylvania Department of Political Science and former Vice President of the National Academy of (Labor) Arbitrators, served as arbitrator and found that Gould had not properly funded the plan. On November 24, 1975, he issued an award which in part ordered the following:
 
 
 4
 5. The Company is directed to make further contributions to the fund, using to calculate them the assumptions that were in effect at the end of 1968. These shall be in addition to the contributions already made.
 
 
 5
 6. These additional contributions shall be for the period when the changed assumptions were made effective after 1968 until the Plan terminated.
 
 
 6
 7. In the event of disagreement concerning the amount of these additional contributions, the Company's and the Union's actuaries shall negotiate the sums. If they cannot agree, their contentions in writing shall be forwarded to me and I will make the determination.
 
 
 7
 8. The money put into the Plan's fund by direction of this award shall be distributed to the eligible employees in accordance with Section 7.2 of the Plan contract as modified by any side agreement in effect at the time of the Plan's termination.
 
 
 8
 Although the arbitrator rejected the union's demand for full funding, he required Gould to recalculate its contributions so that the benefits could be increased in line with the pension agreement's asset allocation provisions. The union, by its counsel and actuary, reviewed the new computations and agreed that they complied with the arbitrator's award. The record does not indicate that this post-arbitration activity was anything more than what a Gould official characterized as "a question of implementing the award and ... working out numbers."[1] The union also released any employee claims against Gould arising from the arbitration.
 
 
 9
 Appellees, active employees whose pension benefits had vested,[2] contended that although some additional money was placed in the trust fund, the dispute was resolved so as to give them no benefits while giving retired employees full benefits. They brought an action in the district court claiming that Gould had breached its contractual obligation under the pension plan and had fraudulently induced the plaintiffs to continue their employment, and that First Trust had breached its fiduciary duty in refusing to pay pension benefits when due. Defendants, citing the finality provision of the Article XVII grievance procedure, moved for summary judgment on the ground that the plaintiffs were bound by the arbitrator's award. Basing its decision on Hauser v. Farwell, Ozmun, Kirk & Co., 299 F.Supp. 387 (D.Minn. 1969), the district court denied the motion. The court was of the view that in submitting the dispute to arbitration, Gould and the union had attempted to "bargain away" rights that were vested under the plan:
 
 
 10
 Accordingly, the court finds that the union and Gould impermissibly engaged in a negotiation endeavor which resulted in the divestiture of the plaintiffs' pension rights. As a consequence, because the plaintiffs did not consent, the settlement and release are inapplicable as a bar to the present action.
 
 
 11
 Adams v. Gould, Inc., No. 78-2365, mem. op. at 11-12 (E.D.Pa. May 12, 1981). In response to defendants' subsequent motion, however, the district court certified for appeal the question now before this court: "Whether Plaintiffs are bound by the results of the arbitration between Gould and their collective bargaining representative and thereby barred from this suit."
 
 II.
 
 12
 Because the district court relied on Hauser v. Farwell, Ozmun, Kirk & Co., we begin our discussion with that case. We are persuaded that its holding and reasoning are irrelevant to the case before us. The union and the company in Hauser entered into negotiations that detracted from vested rights of certain employees; under those circumstances the court stated that it was bound by Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), aff'd, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946), and held that although a union may bargain as to prospective matters, it cannot bargain away accrued or vested rights of its members. Hauser involved no arbitration proceeding; indeed, the court noted that the "collective bargaining contract containing grievance procedures had become defunct." 299 F.Supp. at 392.
 
 
 13
 In the case at bar, however, Gould and the union did not bargain or negotiate; rather, they referred the matter to arbitration pursuant to a viable collective bargaining agreement. Apparently the district court mistakenly equated arbitration-a method of adjudication-with negotiation and bargaining. Appellees contend that the final agreement was a product of negotiation independent of the arbitration. Although the union and Gould held further discussions following the arbitration, as their written agreement demonstrates, they merely implemented the arbitrator's award in all its sophisticated ramifications, performing the calculations he had ordered. Paragraph 7 of the award shows that the arbitrator clearly contemplated that, because of the nature of actuarial assumptions, the parties would be likely to differ about the details of the funding, and therefore he directed them to resolve those differences between themselves, if possible.
 
 
 14
 Moreover, we believe that in its application of Hauser, the district court embraced the fallacy of petitio principii by assuming the conclusion that sum certain financial rights under the pension plan already had vested in the plaintiffs. The clear words of the pension plan militate against this assumption,[3] for its schedule of priorities for distribution upon plan termination provides that "to the extent that such assets are sufficient," they are to be distributed first to retirees, then to participants with vested interests "in full if the remaining assets be sufficient, otherwise on a proportional basis." Thus, the agreement was drafted in contemplation of a circumstance where there might not be enough money to go around, and the employees' "vested" right was only a right to participate in whatever distribution there might be. See United Steelworkers v. Crane Co., 605 F.2d 714 (3d Cir. 1979).
 
 
 15
 In sum, neither the arbitration nor the post-award agreement can be said to represent independent negotiation to disturb rights that were already vested;[4] accordingly, we conclude that the district court's reliance on Hauser was error. We now turn to the intertwined questions of whether the issue was appropriate for arbitration under the collective bargaining agreement and, if so, whether the parties used the proper arbitration provision.
 
 III.
 
 16
 If there is any expression of public policy pertaining to labor-management relations that has emerged loud and clear in today's jurisprudence it is the national policy favoring arbitration of labor disputes. The governing principles are familiar. Federal labor law imposes on the parties to a collective bargaining agreement no inherent duty to arbitrate; instead, arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. The arbitrability of a given dispute is to be determined by the court on the basis of its interpretation of the agreement. In this, the court must be mindful of the federal labor policy encouraging arbitration of labor disputes. The Supreme Court has established a strong presumption favoring arbitrability:
 
 
 17
 (T)o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, .... (a)n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.
 
 
 18
 United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). See cases collected in Eberle Tanning Co. v. Section 63L, 682 F.2d 430 (3d Cir. 1982). Consistent with this policy, the Supreme Court has held that arbitration awards bind not only the union, but also all employees represented by the union. United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 62 n.4, 101 S.Ct. 1559, 1564 n.4, 67 L.Ed.2d 732 (1981) ("an arbitration award stands between the employee and any relief which may be awarded against the company"). See also Panza v. Armco Steel Corp., 316 F.2d 69 (3d Cir.) (per curiam), cert. denied, 375 U.S. 897, 84 S.Ct. 174, 11 L.Ed.2d 125 (1963).
 
 A.
 
 19
 We have no difficulty applying these precepts to the collective bargaining agreement before us. Although, as appellees stress, Article XVII appears to focus on shop-related disputes, it is not limited to those issues.[5] Indeed, the opening sentence of Article XVII demonstrates the parties' understanding that the grievance procedure would be used to resolve "any questions that may arise in the minds of employees." Pension matters properly could be included among these questions, as the pension agreement is, by incorporation in Article XII, made part of the collective bargaining agreement. We are persuaded that the differing views in funding the plan were serious and resulted from varying but reasonable interpretations of Gould's contractual duties under the pension plan. The union argued that the pension agreement required either full funding or funding on a sound actuarial basis; Gould's response was based on section 5.3 of that same agreement:
 
 
 20
 Gould's board of directors shall determine the method by which the plan shall be funded and may change the method of funding from time to time.... (I)f each participating employer makes the contributions required by the computation of the actuary ... the participating employer shall have no further responsibility for the payment of benefits provided by the plan ....
 
 
 21
 In our view the dispute between the UAW and Gould over this pension plan was a classic case for arbitration.
 
 B.
 
 22
 Nor can we agree with appellees that Gould and the union employed an inappropriate procedure. Appellees argue that the arbitration parties erred in using the agreement's general grievance procedure, that they should have presented the dispute to a three-person board for resolution under Article XII.[6] The crucial difference between the two procedures is that, unlike Article XVII, Article XII has no provision that the board's determination will be final and binding.
 
 
 23
 We conclude that the union and Gould properly chose arbitration under Article XVII. The informal procedure outlined in Article XII deals with relatively simple issues, such as dates of individual service or matters relating to dates of individual retirement. The very structure of the Article XII board-one employee, one management representative, and a third member to be chosen by the first two-suggests that the parties to the agreement contemplated that the three-person board would be required to resolve only uncomplicated issues concerning merely the application of the plan. By contrast, the dispute in this case centered on interpretation of basic provisions of the plan, required sophisticated actuarial computations, and concerned all of the covered employees. The particular credentials of the arbitrator chosen here-a nationally known specialist who had to grapple with esoteric problems of pension plan funding-is in itself a strong indication that the parties intended that the more formal arbitration provisions of Article XVII were to be employed in the interpretation of the actuarial provisions of the collective bargaining agreement and the pension plan it incorporated.[7]
 
 IV.
 
 24
 Accordingly, we answer the certified question in the affirmative: the plaintiffs in the district court were bound by the results of the arbitration between Gould and their collective bargaining representatives and therefore barred from bringing the action in district court.[8]
 
 
 25
 The order of the district court will be reversed and the proceedings remanded with a direction to enter summary judgment in favor of the defendants.
 
 
 
 *
 Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 Appellees contend there were no facts in the record supporting appellants' statement that the process of reaching the final amount of $570,000 was "simply a mechanical implementation of the award." The testimony quoted in the text supports appellants' position, however, and appellees introduced no evidence to rebut it
 
 
 [2]
 Under section 4.4 of the pension agreement, "vested benefits" were described as follows:
 A participant whose employment is terminated for a reason other than his retirement or his death, who has a minimum of ten years of credited service shall be entitled to the vested benefit consisting of a pension, the monthly amount of which shall equal the normal retirement benefit. The vested benefit shall be payable on the first day of each month beginning with the participant's normal retirement date and ending upon the first day of the month in which his death occurs.
 
 
 [3]
 Section 7.2 of the pension agreement establishes the following schedule of priorities:
 Upon the termination of the plan with respect to any group of employees, that part of the assets available under the method of funding in effect upon the date of termination which is allocable to the terminated group shall be applied, to the extent that such assets are sufficient, so as to provide retirement benefits (based upon service credited to the date of termination) for participants in the following order of precedence:
 (a) to continue the payment of retirement benefits to retired participants, in full if the available assets be sufficient, otherwise on a proportional basis;
 (b) to provide for the deferred payment of retirement benefits, beginning on their respective normal retirement dates, to inactive participants and active participants having vested interests in the plan, in full if the remaining assets be sufficient, otherwise on a proportional basis; and
 (c) to provide for the deferred payment of retirement benefits, beginning on their respective normal retirement dates, to active participants not having vested interests in the plan, in full if the remaining assets be sufficient, otherwise on a proportional basis.
 
 
 [4]
 We note that in the agreement the parties stated:
 Notwithstanding the foregoing, the UAW, if Gould should breach this Agreement, may elect to enforce the terms of this Agreement or to enforce the opinion of Arbitrator Horlacher. If the UAW elects to enforce said Arbitrator's opinion, then Gould shall be given full credit for any and all payments made pursuant to this Agreement.
 We construe this to mean that the parties had reached an agreement as contemplated in paragraph 7 of the arbitrator's award. In the event that Gould breached the agreement, then, consonant with paragraph 7, the union had the right to apply to the arbitrator "to make the determination" of the additional contributions.
 
 
 [5]
 Article XVII details a six-step grievance procedure. Submission of a dispute to an arbitrator is controlled by step (6) of section 1, and by section 2
 SECTION 1. It is understood that any questions that may arise in the minds of employees are to be presented to their Foreman in the regular course of work. It is further understood that the Union shall have the right to submit the question of a discharge to the Grievance Procedure. Information concerning work, working conditions and Company rules and regulations will be supplied by the employees' Foreman. Instructions shall be given by the Foreman of a department, or designated employees of the department, or the Training Department, with the knowledge and sanction of the Foreman. If in the course of work any misunderstanding occurs which the Foreman cannot settle, thereby leading to a grievance, the following procedure shall be followed:
 Step (6). If the grievance cannot be settled promptly and amicably between the parties hereto as outlined above, such matter shall be jointly referred within a period of thirty (30) days following the Company answer in Step 5, to the Federal Mediation and Conciliation Service, who shall be requested to submit a list of five arbitrators' names, from which list the Company and the Union shall each strike out not more than two such names. The Service shall then appoint an arbitrator from the list whose name has not been stricken as aforesaid. The arbitrator shall render his decision within thirty (30) days after presentation of the case. The party losing the case shall pay the cost for the services of the arbitrator. The arbitrator shall have the authority to assess one or the other of the parties the entire cost or divide it in any proportion between them when the decision is such that the losing party cannot be readily identified. Each party shall bear the expense of preparing and presenting its own case and the cost of their own representatives.
 SECTION 2. The arbitrator may consider and decide only the particular grievance presented to him by the Company and the Union, and his decision shall be based solely upon his interpretation of the provisions of this Agreement. The arbitrator shall not have the right to amend, take away, modify, add to, or change any of the provisions of this Agreement. The decision of the arbitrator shall be final and binding on the Company, Union and employees and shall be carried out by them without strike, slow-down, or lockout.
 
 
 [6]
 Article XII in part directs that
 A board composed of 1 employee and 1 management member shall be established at the Union group location to settle any differences or disputes regarding the application of provisions of the plan to employees including differences or disputes concerning any extension of retirement date. The board shall also include an impartial chairman chosen by its members.
 
 
 [7]
 As further indication of the dispute's complexity, in the proceedings before the arbitrator the UAW was represented by a member of the Philadelphia bar experienced in labor litigation, by a UAW assistant general counsel, by a UAW actuary, by the president of Local 416, and by other members of the local. Such an array does not indicate that the matter was one for informal resolution under Article XII
 
 
 [8]
 We need not and do not reach appellants' contention that the district court action was barred by the applicable statute of limitations