Matthew A. **DELGROSSO**, James P. Blair, Lester Ware, Jimmie Mines, Jr., Joe Henry, Robert C. Trainer, Jay T. Richler, Robert Hardwick, Jerome J. Phillips, Gilbert Weese, Larry K. Hill, Charles G. Church, Jr., John R. Alves, Barry K. Ralz, Donald Lee Adams, Charles Woodrum, Richard W. Martineau, and Hubert J. Lee, Plaintiffs,

v.

SPANG AND COMPANY, Defendant.

Civ. A. No. 82-2672.

United States District Court,
W.D. Pennsylvania.

Sept. 29, 1983.

---

Daniel P. McIntyre and Joy E. Klopp, Pittsburgh, Pa., for plaintiffs.

William T. Marsh, Butler, Pa., Henry J. Wallace, Jr., and Robert F. Prorok, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Plaintiffs were employed at the Ferroslag Division Plant of defendant Spang and Company in Lorain, Ohio, until on or about July 20, 1982, at which time said plant was closed by defendant. This action, brought pursuant to the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Labor-Management Relations Act (hereinafter referred to as "LMRA"), 29 U.S.C. § 141, *et seq.*, seeks certain pension benefits allegedly due the plaintiffs.[1] Plaintiffs' complaint[2] contains four counts.

In Count I, plaintiffs allege that the defendant and the United Steelworkers of America, which represented plaintiffs during their employment for defendant, entered into a collective bargaining agreement that was effective from August 1, 1980, through November 1, 1983. This agreement allegedly covered the terms and conditions of employment. A particular provision of that collective bargaining agreement provided that a previously drafted pension plan would continue in effect until November 1, 1983, as amended by a memorandum of agreement dated August 1, 1980. According to the complaint, the union and the defendant entered into a pension agreement as amended by the memorandum of agreement dated August 1, 1980, with the pension agreement being effective under the new collective bargaining agreement from November 1, 1980, through November 1, 1983. The pension agreement, which is attached to the complaint as an exhibit, provides that contributions made by the defendant to the pension fund may not revert to the defendant under any circumstances. Complaint, Exhibit B, § 12.6, p. 25 (docket entry No. 5). The pension agreement further dictates the manner in which the assets of the pension fund are to be distributed in the event of a plant shutdown. Specifically, the pension agreement sets up a priority of allocations for the distribution of said benefits. *See*

---

1. Plaintiffs allege that defendant is an employer engaged in interstate commerce, thereby making it subject to the requirements of both acts.

2. Plaintiffs' original complaint was filed on December 13, 1982. On January 18, before any responsive pleading was filed (*see* Fed.R.Civ.P. 15(a)), plaintiffs amended their complaint as a matter of course. When the Court uses the term "complaint" in the text, it is actually referring to the amended complaint because an amended complaint, such as that filed by plaintiffs, that is complete in itself and that neither makes reference to nor adopts any position of the original complaint, serves to supersede the original complaint. *Lubin v. Chicago Title and Trust Co.*, 260 F.2d 411, 413 (7th Cir.1958).

Complaint, Exhibit B, ¶ 13.3, pp. 27–28 (docket entry No. 5). Count I goes on to assert that when the Lorain plant was closed on or about July 20, 1982, there was an excess of $100,000 in the pension fund beyond that needed to cover vested benefits, but defendant has allegedly not allocated the excess benefits for the benefit of the plaintiffs as it is obligated to do under the appropriate section of the pension plan. Based on these assertions, plaintiffs claim that the defendant has breached its fiduciary duty [3] under ERISA by not complying with the appropriate sections of the pension agreement.

Count II incorporates by reference all of the foregoing allegations and asserts that the defendant intends to hold the surplus money in the trust fund until the collective bargaining agreements expire. The plaintiffs argue that upon the expiration of the agreements, the defendant will argue that the surplus can be kept by the defendant for its own use and benefit. In Count II, plaintiffs aver that this conduct serves to violate the fiduciary mandates of ERISA, which require the fiduciary to discharge its duties solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

In Count III, plaintiffs assert that the pension agreement provides that the pension plan shall be amended so as to be consistent with the pension agreement. The plaintiffs then assert that instead of amending the plan to make it consistent with the pension agreement, the defendant published a plan that seeks to retain surplus assets for the defendant's own behalf and avoid other relevant obligations imposed by the collective bargaining agreements. On this basis, the plaintiffs again assert a violation of ERISA's fiduciary responsibilities.

Finally, in Count IV, plaintiffs assert that by drafting the pension plan in a manner inconsistent with the collective bargaining and pension agreements, defendant has violated its contractual obligations under the LMRA.

Defendant has moved to dismiss the action on the following grounds: (1) that plaintiffs have failed to exhaust the agreed upon disputes procedure set forth in the agreements upon which they claim entitlement to relief; (2) that plaintiffs lack standing to assert the claims set forth in Counts I and II; and (3) that Counts I and II do not state a cause of action because ERISA does not provide a pre-termination of pension fund right to surplus pension plan assets. Motion to dismiss (docket entry No. 17). For the reasons set forth below, the Court hereby denies defendant's motion.[4] In order to facilitate orderly discussion of the motion, the Court discusses each of defendant's arguments separately, and in detail, below.

## I. Failure to Exhaust Contractual Remedies

Defendant first argues that the case must be dismissed because plaintiffs have failed to exhaust the grievance and arbitration procedures provided for in the applicable agreements, which are a prerequisite to federal court jurisdiction under ERISA and the LMRA. As to the ERISA claims, defendant relies primarily upon the Third Circuit decision in *Adams v. Gould, Inc.*, 687 F.2d 27 (3d Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1777, 76 L.Ed.2d 348 (1983). In *Adams*, the defendant announced that it was terminating operations at one of its plants, and the union, after determining that the pension plan was actuarially insuf-

---

**3.** Paragraph 2 of plaintiffs' complaint alleges that defendant "is an 'employer,' a 'party in interest,' a 'plan sponsor,' an 'administrator,' and a 'fiduciary' with respect to the Pension Agreement." (Docket entry No. 5).

**4.** The Court is cognizant of the fact that plaintiffs have filed a motion for summary judgment in this case, asserting that there is no question of material fact and that they are entitled to judgment as a matter of law because defendant has breached its fiduciary duty and because plaintiffs have a right to reformation of the contract. This opinion deals only with the motion to dismiss; the motion for summary judgment will be addressed at a later time.

ficient to provide full benefit payments to all claimants and retirees, demanded that the defendant fully fund the plan. The defendant refused, and the union filed a grievance under the grievance procedure of the collective bargaining agreement. The arbitrator rejected the union's demand for full funding, but ordered that defendant recalculate its contributions so that the benefits could be increased. The plaintiffs, active employees whose pension benefits had vested, then brought an action in district court, alleging that the administrator of the plan had breached its fiduciary duty by refusing to pay benefits when due. Defendant moved for summary judgment on the ground that the plaintiffs were bound by the arbitration decision, but the district court held that the arbitration was not binding.

The district court then certified the following question for interlocutory appeal under 28 U.S.C. § 1292(b): "Whether ... plaintiffs ... are bound by the results of an arbitration between their employer and their union and thereby barred from bringing their complaint in federal court." *Id.* at 28. The Third Circuit accepted the issue for appeal and answered the question affirmatively, thereby reversing the district court. Specifically, the Third Circuit found that the defendant and the union had referred the matter to arbitration pursuant to a viable collective bargaining agreement, and, in making its decision, the Third Circuit relied on the national policy favoring arbitration of labor disputes. After finding that the arbitration provision of the applicable agreement covered the dispute in question, the Third Circuit found that "the plaintiffs in the district court were bound by the results of the arbitration ... and, therefore, barred from bringing the action in district court." *Id.* at 33.

After a careful reading of the *Adams* decision, this Court finds that it is distinguishable from the case at hand and, therefore, not controlling. The dispute in *Adams* arose before the effective date of ERISA,[5] and there was no question as to

whether defendant's conduct violated a federal statutory mandate such as the Court is confronted with in this action; therefore, the Court finds that *Adams* does not control the case before this Court. *But see Wilson v. Fischer and Porter Company Pension Plan,* 551 F.Supp. 593 (E.D.Pa. 1982). Alternatively, the Court looks to several other decisions which are dispositive of the issue at hand.

First, the Court looks to the District of Columbia Court of Appeals' opinion in *Airline Pilots Association, International v. Northwest Airlines, Inc.,* 627 F.2d 272 (1980). In that case, the union brought an action against the defendant airline for declaratory and monetary relief, asserting that the airline violated certain aspects of the collectively bargained pension plan and also violated certain provisions of ERISA. The defendant moved to dismiss for lack of subject matter jurisdiction, claiming that, pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.,* the whole dispute had to be submitted to arbitration because it considered the interpretation and application of the collective bargaining agreement. The defendant also asserted that the compulsory arbitration requirements of the Railway Labor Act took precedence over that section of ERISA, which opens the district court to pension suits. The district court dismissed the entire action, and the Circuit Court affirmed the district court's dismissal of those claims relating to the application and interpretation of the pension plan, but reversed the district court with respect to those claims alleging violations of ERISA that were independent of the coverage and meaning of the pension plan. The District of Columbia Circuit specifically held that if paragraphs of the complaint can be read "as independently charging contravention of the obligatory fiduciary standards of ERISA," then a federal cause of action is stated, and the plaintiff need not exhaust the arbitration requirements. *Airline Pilots Association,* 627 F.2d at 277. *See Lewis v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 431 F.Supp.

---

5. The dispute in *Adams* arose in 1973, and ERI- SA was not effective until January 1, 1975.

271 (E.D.Pa.1977) (agreements to arbitrate ERISA claims invalid).

 Here, plaintiffs' ERISA counts (Counts I through III) allege violations of ERISA's fiduciary standards. Specifically, those counts assert claims under 29 U.S.C. § 1104(a)(1)(A)[6] (that a fiduciary discharge his duties solely in the interest of the participants and beneficiaries for the purpose of providing benefits to the participants and beneficiaries) and § 1104(a)(1)(D)[7] (that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries in accordance with the documents and instruments governing the plan). Construing plaintiffs' complaint in a liberal fashion and most favorably to the plaintiffs[8] (see *Airline Pilots Association*, 627 F.2d at 277), the Court finds that the first three counts of the complaint should be read as independently charging contravention of the obligatory fiduciary standards of ERISA, and, therefore, those counts are not subject to arbitration.

Moreover, two United States Supreme Court decisions, *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1973), also support the position that exhaustion of arbitration provisions under a collective bargaining agreement are not a necessary prerequisite to a federal court action when a federal statutory right is involved. See also *Gavalik v. Continental Can Co.*, Civil Action No. 81–1519 (W.D.Pa. March 26, 1982). In *Alexander*, the Supreme Court held that an individual's right to equal employment opportunity under Title VII was independent of an employee's non-discrimination rights under a collective bargaining agreement and that an employee's initial resort to the grievance procedure did not preclude a later court action.[9] The Court went on to note the specific problems with submitting a statutory dispute to an arbitrator. Foremost among those problems, according to the Supreme Court, is the fact that "the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land."[10] 415 U.S. at 57, 94 S.Ct. at 1024. "Moreover, the factfinding process in arbitration usually is not equivalent to judicial findings"; that is, the record of an arbitration proceeding is not as complete as that of a court proceeding, the rules of evidence do not apply, and the right to discovery is severely limited. *Id.*

Likewise, in *Barrentine*, the Supreme Court concluded that an employee's right to minimum wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, was independent of his right to collectively bargain for wages.[11] Thus, according to *Barrentine*, a court can entertain an independent action pursuant to the Fair Labor

---

**6.** Title 29 U.S.C. § 1104(a)(1)(A) provides as follows: "(a)(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

**7.** Title 29 U.S.C. § 1104(a)(1)(D) provides as follows: "(a)(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—* * * (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this chapter."

**8.** In reviewing a motion to dismiss, the Court must construe the pleadings liberally and most favorably to the non-moving party, in this case the plaintiffs. See *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

**9.** Even though the *Alexander* case involved Title VII claims, the Court believes that the basic principle for which the case is cited applies here. *Airline Pilots Association*, 627 F.2d at 277.

**10.** The Supreme Court emphasized that the resolution of statutory or constitutional issues is a primary responsibility of the courts.

**11.** Like its position on *Alexander*, the Court finds the *Barrentine* rationale applicable here even though that case involved a Fair Labor Standards Act claim.

Standards Act, even after a grievance has been filed and processed. In this respect, the Supreme Court specifically stated:

> Not all disputes between an employee and his employer are suited for binding resolution in accordance with the procedures established by collective bargaining. While courts should defer to an arbitrable decision where the employee's claim is based on rights arising out of the collective bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute....

The Court acknowledges that it can be argued here that plaintiffs' claims arise primarily from the very agreements which contain the arbitration and grievance provision. However, the Court must construe the complaint most favorably to the non-moving party, and the complaint specifically claims federal statutory violations. Therefore, the Court finds that the issues are not subject to arbitration,[12] but the Court also notes that it will restrict plaintiffs to proving the federal statutory violations at trial and not permit them to prevail on mere contractual violations.

As to the LMRA claim (Count IV), the Court also finds that this claim is not barred by plaintiffs' failure to exhaust the arbitration and grievance procedures. Defendant cites the Court to the United States Supreme Court decisions of *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), *Republic Steel Co. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), and *Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), claiming that these three cases require that plaintiffs must exhaust their contractual remedies before bringing an action in federal court under the LMRA. The Court again rejects defendant's argument because the three Supreme Court cases cited above all involved situations in which a party was asserting a contractual right arising out of a collective bargaining agreement, rather than a violation of a federal statutory mandate. Count IV asserts a violation of a specific statutory mandate and is, thus, controlled by the *Alexander* and *Barrentine* decisions discussed *infra*. Since plaintiffs' claim in Count IV is based on rights arising out of a statute,[13] it is not subject to arbitration.[14]

## II. Standing

Defendant next moves to dismiss Counts I and II of the complaint on the basis that plaintiffs lack standing to assert the claims contained therein. In support of this motion, defendant first cites the Court to § 13.3 of the pension agreement, which provides as follows:

> In the event a plant is permanently shut down or a plant is relocated outside of the Geographical Area of its present operation, the assets of the fund established for the Pension Plan are to be allocated to each plant location in relationship to the contribution made on behalf of all Participants at such locations compared to the total Contributions made on behalf of all locations. From the funds so established, there shall be deducted:
>
> (a) The reserves applicable to those Participants who have been transferred to other locations.
>
> (b) Sufficient reserves to insure those persons then receiving benefits to continue to so receive them.

---

**12.** The Court adds one final ground for holding that the claim in Count III—that the defendant violated its fiduciary duty by not drafting a plan that is consistent with the agreement—should not be referred to arbitration. The Court finds that the claim in Count III does not fall within the purview of the arbitration provision. *See* Complaint, Exhibit B, § 11.2, p. 23 (docket entry No. 5).

**13.** The Court again adds that plaintiffs will be required to prove the right under the statute and will not be permitted to prevail on the basis of breach of contract.

**14.** As an alternative basis for this holding, the Court finds that the claim asserted in Count IV is not of the type contemplated by the arbitration provision of the agreement. *See* footnote 12, *supra*.

(c) Reserves to provide benefits for those entitled to benefits but who are not at that time receiving them.

(d) The remaining assets will be prorated among the remaining Participants in relation to each Participant's established seniority to the total seniority of all Participants for whom distribution is to be made.

For the purpose of this partial termination Section, those Participants who are on layoff and if recalled would not have a break in Continuous Service for pension purposes will be considered as active Participants for the allocation under (d) above.

Complaint, Exhibit B, ¶ 13.3, pp. 27–28 (docket entry No. 5). After citing this section, the defendant then asserts that plaintiffs lack standing to assert the claims contained in Counts I and II because they fall within subparagraph (c), rather than subparagraph (d), of § 13.3; that is, the defendant argues that with the shutdown of the Lorain Plant, reserves were allocated to each plaintiff to provide the defined benefit to which he was entitled under the pension agreement on the basis of his years of service within the plant, but which he was not entitled to receive because he had not satisfied the age requirement, which causes the plaintiffs to fall within subparagraph (c), rather than subparagraph (d)—the basis for Counts I and II.

■ The Court rejects this argument because, as plaintiffs correctly state, defendant is actually arguing the merits of the case under the guise of a standing argument. As the Supreme Court has stated, the issue of standing is "whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton*, 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972). In order to meet the standing test, a plaintiff must assert more than a generalized grievance, or rights, of third parties; he must assert

his own legal rights based on an actual or concrete injury. *See Valley Forge College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 469, 471–472, 102 S.Ct. 752, 756, 757–758, 70 L.Ed.2d 700 (1982). The Court believes that plaintiffs' complaint does meet the standing requirements as discussed in the above United States Supreme Court cases.

### III. Pre-termination Right to Pension Fund Surplus

Defendant finally argues that Counts I and II of the complaint should be dismissed because the Third Circuit has stated, in *Van Orman v. American Insurance Co.*, 680 F.2d 301 (3rd Cir.1982), that there is no right to the actuarial surplus in a trust fund prior to the termination of the underlying pension plan. Specifically, defendant argues that it has not terminated the trust fund containing the surplus alleged to be present in Counts I and II; therefore, based on the *Van Orman* case, the plaintiffs have no right to the surplus at this point. In *Van Orman*, the participants in the pension plan brought suit in district court against the employer, the successor pension plan, and others seeking entitlement to the actuarial surplus in the plan. The plan was funded by contributions from both the participants and the employer. The Court acknowledges that the *Van Orman* Court held that there was no right to surplus assets prior to termination of the pension fund; however, that case is clearly distinguishable from the case at hand. In *Van Orman*, the underlying contract did not afford plaintiffs any pre-termination right to the surplus and, in fact, expressly stated that the employees had no rights to the fund other than those provided in the contract.[15] 680 F.2d at 312. Thus, the Court was actually dealing with the question of whether there is a pre-termination right to surplus benefits, aside from any contractual provisions, under ERISA, based on an unjust enrichment theory. The Court found that ERISA does not pro-

---

**15.** The Third Circuit, citing *Murphy v. Heppenstall Co.*, 635 F.2d 233, 239 (3d Cir.1980), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d

293 (1982), specifically stated that the inquiry in *Van Orman* differs from a case in which a party seeks to enforce a contractual right.

vide such a pre-termination right to the surplus, nor is the right necessary to effectuate any statutory policy. *Id.* at 313. On this basis, the Court found no pre-termination right.

 In this case, on the other hand, the pension agreement specifically provides a contractual right to surplus benefits when a plant is permanently shutdown. At § 13.3 of the pension agreement, the plan provides for the allocation of surplus benefits upon the shutdown of a plant, and that section specifically states that surplus assets are to be prorated among the remaining participants in relation to each participant's established seniority to the total seniority of all participants for whom distribution is to be made. Complaint, Exhibit B, § 13.3(d), p. 28 (docket entry No. 5). Thus, an underlying contractual provision [16] is present in this case, and the plaintiffs stand on solid ground in alleging an ERISA violation based upon an underlying contractual agreement in which the employer has contractually obligated itself to provide certain benefits. *See Van Orman,* 680 F.2d at 312; *Murphy v. Heppenstall Co.,* 635 F.2d 233, 239 (3d Cir.1980), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982).[17]

An appropriate Order will be issued.

16. It must be noted that § 13.3 of the pension agreement, set forth in Section II *supra,* provides for distribution of the plan assets upon shutdown of the plant and not upon termination of the pension fund.

17. In *Murphy,* the Third Circuit stated that "[i]t is not inconsistent with the statutory scheme [of ERISA] to permit employees to recover directly from the employer any additional benefits to which the employer has contractually obligated itself." 635 F.2d at 239.