Robert J. ADAMS, Merredna T. Buckley, William J. Calloway, James Joseph Connell, Anthony Michael Cosella, John R. Cook, Anne Crowley, on behalf of the Estate of William J. Crowley, Deceased, Kathryn M. Cullen, Angelina A. Dicarlo, Rocco Delgrammastro, Kathleen Diehl, as Executrix, of the Estate of John M. Dillenschneider, Deceased, Wanda A. Domarotsky, Frank A. Dregar, Robert J. Egy, Amanda Fay, Martha Flinn, Thomas E. Flood, Cornelius Frazier, Jr., Mary Gerace, Rose T. Guokas, John Guy, Mary F. Habina, James Hickman, John Hudson, Robert H. Jones, Pearl Kelly, Joseph J. Klein, Elizabeth D. Linder, Augustine Marucci, James McGowan, Elizabeth A. McNally, John Morris, John Mumbower, Anna M. Myers, Agnes M. Myers, John A. Neff, Ruth O'Donnell, Grace Mary Papala, Anna Petriccione, Richard M. Phillips, Russell Ralls, Florence Raysick, Daniel J. Ronau, Bernard C. Russell, John V. Russell, Margaret Russell, Anthony Santoleri, Walter J. Stanowitch, Madeline T. Stein, John F. Steinmetz, Beatrice L. Stillwell, Marie Smith, Nancy Swallow, Marion Thompson, William J. Watts, Antoinette W. Weiss, Clifford W. Williams, Robert Williams, James C. Wollner, Frank Umstetter, Marie Venti, James C. Willner, Bridget Barlow, Appellants,

v.

GOULD INC. and First Trust Company of St. Paul, Minnesota, Individually and as Trustee of the Gould Inc. Pension Trust For Hourly Employees and Pension Benefit Guaranty Corporation, Appellees.

No. 83–1352.

United States Court of Appeals, Third Circuit.

Argued Jan. 24, 1984.

Decided June 28, 1984.

As Amended July 13, 1984.

Rehearing and Rehearing In Banc Denied July 25, 1984.

Marvin F. Galfand (argued), Galfand & Galfand, Richard A. Ash, Lyman & Ash, Philadelphia, Pa., for appellants.

Robert E. Mann (argued), J. Stephen Poor, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., John Markle, Jr., Mark M. Wilcox, Drinker, Biddle & Reath, Philadelphia, Pa., for appellees Gould, Inc. and First Trust Co. of St. Paul, Minn.

Richard H. Kyle, Briggs & Morgan, St. Paul, Minn., for appellee First Trust Co. of St. Paul, Minn.

Before GIBBONS and BECKER, Circuit Judges, and ATKINS, District Judge.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is a suit by a number of former employees of Gould Inc. against Gould and the First Trust Company of St. Paul Minnesota ("First Trust"), Gould's pension plan trustee, alleging that Gould violated the plaintiffs' rights by underfunding the Gould pension trust and that, despite their long service to the company, the plaintiffs have consequently been deprived of any pension benefits whatsoever. The case

was brought in 1978. It has been before this court once before, on a 28 U.S.C. § 1292(b) certification. *Adams v. Gould*, 687 F.2d 27 (3d Cir.1982).

In its simplest terms, the question presented by this appeal is whether the district court abused its discretion in denying plaintiffs' motion to alter or amend the summary judgment it entered in favor of defendants and for contemporaneous leave to file a second amended complaint. The gravamen of the proposed amended complaint was that the labor union representing plaintiffs had breached its duty of fair representation, and that Gould breached the collective bargaining agreement, when Gould and the union reached a settlement implementing an arbitration award settling the underfunding dispute. This contention was asserted earlier in the litigation in plaintiffs' briefs, but was not addressed either by the district court or by this court (which limited its ruling to responding to a certified question that did not subsume that claim).

This description, however, masks the complexity of this appeal, the disposition of which will require consideration of procedural issues as well as issues of pension law and labor law. The most important issue before us involves the application of the recent Supreme Court decision in *Del Costello v. International Brotherhood of Teamsters*, — U.S. —, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In *Del Costello*, the Court held that the six-month statute of limitations of section 10(b) of the National Labor Relations Act applied in the context of a suit by an employee alleging a breach of the collective bargaining agreement by the employer and a breach of the duty of fair representation by the employee's union. The issue before us is whether a different statutory period applies where the subject matter of the suit is collectively bargained pension rights.

For the reasons that follow, we believe that the motion to alter or to amend the

judgment and for leave to file an amended pleading should have been granted. We therefore vacate the judgment of the district court and remand for further proceedings.

## I.

In 1962, Gould purchased the Wilkening Manufacturing Company's piston ring plant, assuming the pension plan agreement negotiated in 1953 by Local 416 of the United Automobile Workers Union ("Local 416") and Wilkening. In 1972, Gould and Local 416 entered a collective bargaining agreement, incorporating by reference the "Gould Inc. Pension Plan," ("the Plan"), which thereupon covered the past and present employees of the Wilkening plant.

In 1974, Gould decided to close the Wilkening plant. Pursuant to section 7.1 of the Plan, Gould terminated the Plan as to the employees, both currently working and retired, who were covered by the Plan due to their employment at the Wilkening plant (the "Wilkening beneficiaries"). Under section 7.2 of the Plan, the assets in the pension fund attributable to the Wilkening plant were to be used to pay pensions to the Wilkening beneficiaries according to a system of priorities specified therein. Under this system, beneficiaries already retired (the "current retirees") had the first priority, and would receive their pensions to the extent possible given the Plan's assets. If the current retirees were paid their full pensions, then the employees with ten or more years of credited time, whose rights were therefore "vested" under the Plan ("vested employees") would receive their pensions when they reached retirement age, to the extent of the remaining assets.[1] When the Wilkening plant was closed, the assets of the pension fund were insufficient to pay the current retirees' pensions in full, and thus the vested employees were not entitled to receive pensions under the Plan when they reached retirement age.

---

1. If the vested employees had been paid in full, the remaining assets in the Plan would then have been used to fund pensions for employees with less than ten years at the plant upon their retirement. These "non-vested" employees are not parties to this case.

Local 416 brought a grievance against Gould under section XVII of the collective bargaining agreement, seeking to force Gould to fund the pension benefits of the Wilkening beneficiaries in full. The grievance proceeded to arbitration. Although the arbitrator held that Gould did not have to fund the Plan in full, he found that Gould had improperly changed its actuarial assumptions in 1969 in such a way that its contributions to the Plan attributable to the Wilkening plant decreased. At about the same time, Gould had begun considering closing the Wilkening plant. The arbitrator held that the use of "less conservative" actuarial assumptions at a time when Gould was considering closing the plant was improper. The arbitrator therefore ordered the parties to determine by negotiations the amount by which Gould's contributions were less than they would have been had the proper actuarial assumptions been used, and directed Gould to pay that amount into the pension fund.

After negotiations, Gould and Local 416 agreed that the amount of the undercontribution was $570,600. They also negotiated a settlement of the grievance (the "Settlement"), pursuant to which Gould agreed to guarantee full pension rights to the current retirees in exchange for not having to deposit $570,600 with the Plan's trustee, defendant First Trust. The agreement stated that the Settlement was providing "additional retirement benefits" to the current retirees, and accordingly provided a mechanism in the settlement to increase the benefits paid to the current retirees in the event that the value of the pensions paid under the settlement at any time became less than the value of the pensions that would have been paid if the $570,600 had been deposited. The vested employees, however, were not entitled to any benefits under the Settlement.

On July 13, 1978, the plaintiffs, a number of the vested employees, brought this suit. The complaint[2] alleged that the Plan provided for stated monthly benefits upon retirement, that the employees were induced to accept a lower wage because of these promised benefits, and that the failure of Gould to fund these benefits was a breach of the collective bargaining agreement and amounted to fraudulent inducement. The complaint also charged First Trust with breach of its fiduciary duty to plaintiffs in failing to pay benefits when due. Defendants moved for summary judgment, arguing that Gould had properly terminated the Plan pursuant to its terms. The defendants also argued that plaintiffs' claims had been resolved by the arbitration proceeding, at which the plaintiffs were represented by Local 416, and that the plaintiffs were thus bound by the arbitrator's decision. The district court denied summary judgment, holding that the arbitrator's award could not dispose of the plaintiffs' "vested" rights in the Plan.

The district court then certified, pursuant to 28 U.S.C. § 1292(b), the question "whether plaintiffs are bound by the results of the arbitration award between Gould and their collective bargaining representative and thereby barred from this suit." This court allowed the appeal, and in *Adams v. Gould*, 687 F.2d 27 (3d Cir. 1982), concluded that they were. The certified question raised the issues of the power of Local 416 to negotiate for the vested employees concerning their rights after their employment at the Wilkening plant had ended, and the power of Local 416 to negotiate concerning the "vested" pension rights of the vested employees. The court held that arbitration was a form of adjudication, not negotiation, and that therefore the rule against allowing a Union to negotiate away the vested rights of its members did not apply. We also held that the pension rights of the plaintiffs were not "vested" in the legal sense, because they were dependent on the presence of funds in the Plan, that the subsequent settlement only effectuated the arbitration agreement, and thus that the union did not exceed its power in negotiating on behalf of the vested

---

**2.** The allegations listed here are those of the amended complaint, filed on January 31, 1979.

Summary judgment was entered on the basis of plaintiffs' contentions in that complaint.

employees in reaching the Settlement.[3] We specifically limited our holding to the certified question, and declined to reach the issue now before us, although the plaintiffs tried to raise it at oral argument. Since the certified question was the only legal theory raised in the plaintiffs' complaint, and its resolution was dispositive, we reversed the judgment of the district court and directed that summary judgment be entered for the defendants. On October 6, 1982, the district court entered summary judgment.

On October 19, 1982, the plaintiffs moved to alter or amend the judgment and for leave to file a second amended complaint. In the motion, plaintiffs formally advanced the theory now before us. Succinctly stated, the theory is that the settlement agreement between Local 416 and Gould was in conflict with the arbitration award, because Gould did not deposit the amount of the underpayment with First Trust as ordered by the arbitrator, and that the interests of the vested employees were compromised by the Settlement. Plaintiffs assert that, if the $570,600 had been deposited with the trustee, the trust fund would have invested the money, and because of the tremendous rise in interest rates in the late 1970's and early 1980's, would have received a sufficient return to not only pay the full pensions of the current retirees, but also to pay some pension benefits to the vested employees. Under the Settlement, however, the vested employees get nothing. Plaintiffs assert that the failure of Gould to place the $570,600 in trust violated the arbitrator's award, and thus the collective bargaining agreement. Most importantly, they also allege that, in negotiating the Settlement, Local 416 breached its duty of fair representation.

The district court denied plaintiffs' motion to reopen the judgment and amend the complaint on April 14, 1983.[4] Plaintiffs appeal, arguing that their motion should have been granted because they have asserted a meritorious claim that entitles them to benefit under the Plan, and on which the courts have not had an opportunity to rule.

## II.

■ We are confronted with a situation in which the district court denied a motion to alter or amend a judgment pursuant to Fed.R.Civ.P. 59(e), and refused to allow the plaintiffs to file a second amended complaint pursuant to Fed.R.Civ.P. 15(a). Our problem is complicated, however, by the fact that the district court did not state the grounds on which it denied the plaintiffs' motion. We must, therefore, examine the record to determine whether there are any grounds on which we can sustain the district court's decision.

■ In reviewing the district court's decision, the first issue we must confront is our scope of review. Where a district court refuses to allow a plaintiff to amend his complaint pursuant to Fed.R.Civ.P. 15(a), the decision may only be reversed if the district court abused its discretion. *Heyl & Patterson International, Inc. v. F.D. Rich Housing, Inc.*, 663 F.2d 419, 425 (3d Cir.1981). Similarly, when a district court rejects a motion to alter or amend a judgment, the standard of review is whether the district court abused its discretion. The district court's exercise of discretion, however, must be within the limits of the

---

**3.** In disposing of the argument that, notwithstanding the fact that arbitration is not a forum of negotiation, the post-arbitration settlement resulted from impermissible bargaining over vested rights, we said:

Although [Local 416] and Gould held further discussions following the arbitration, as their written agreement demonstrates, they merely implemented the arbitrator's award in all its sophisticated ramifications, performing the calculations he had ordered.

687 F.2d at 30.

**4.** This district court did not assign reasons for its actions. The court may well have felt obliged to deny the motion by reason of our previous opinion. In fairness to the learned district court, we also note that it did not have the benefit of certain intervening decisions of this court and the Supreme Court that bear on the resolution of the issues in this case.

law. The Sixth Circuit has explicitly held that a court of appeals has plenary review on appeal from the denial of a Fed.R.Civ.P. 59(e) motion, where the decision denying the motion is based on a legal error. *Huff v. Metropolitan Life Insurance Co.*, 675 F.2d 119, 122 n. 5 (6th Cir.1982). *See also* 6A J. Moore, *Moore's Federal Practice* § 59.15[4] at 59–336. We agree, and therefore hold that, in reviewing an order denying a motion to alter or amend a judgment filed pursuant to Fed.R.Civ.P. 59(e), the appropriate scope of review over matters committed to the discretion of the district court is abuse of discretion, but over matters of law the court of appeals has plenary review.

█ Fed.R.Civ.P. 15 embodies the liberal pleading philosophy of the federal rules. Under Rule 15(a), a complaint may be amended once as a matter of right and afterward by leave of the court, which is to be freely granted. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597–98 (5th Cir.1981). This liberal amendment philosophy limits the district court's discretion to deny leave to amend. The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party. *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230; *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir.1984). The court may also refuse to allow an amendment that fails to state a cause of action. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.1983).

█ Our scope of review in this case turns on the interrelationship between the scope of review applicable to Rule 59(e) motions and that applicable to Rule 15(a) motions. The Fifth Circuit was confronted with a similar situation in *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir.1981). In *Dussouy*, the district court had dismissed the complaint without leave to amend. The court of appeals reversed, and in doing so held that, where a timely motion was filed under Fed.R.Civ.P. 59(e), the Rule 15 and Rule 59(e) inquiries turned on the same factors. 660 F.2d at 597 n. 1. We agree and adopt the Fifth Circuit's approach. Thus, in examining each possible ground on which the district court could be sustained, we will apply the standard of review which would be applicable had the motion been brought without the complication of a prior grant of summary judgment, although the factors that must guide our review may be affected by the fact that a summary judgment was granted before plaintiffs sought leave to amend their complaint.

Therefore, we must first examine the substance of the theory that plaintiffs attempted to assert in their second amended complaint, to determine whether the amended complaint states a cause of action. Next, we must consider the relationship between that claim and what was decided by the previous panel in this case, to see whether claim is barred by that decision. Third, we must determine whether the cause of action is barred by the statute of limitations. Our scope of review over these three questions is plenary. Finally, we will examine the factors which must inform the district court's discretion in denying a motion to reopen a judgment and amend a complaint under Rules 59(e) and 15(a), to determine whether that discretion was abused.

### III.

#### A.

█ Plaintiffs are members of Local 416 and beneficiaries under the Plan. They seek to sue Gould directly for breach of an obligation under an arbitration award entered pursuant to the grievance procedure of a collective bargaining agreement. The obligation allegedly breached affects the pension rights of the plaintiffs. In their second amended complaint, the plaintiffs also allege that Local 416 breached its duty of fair representation by entering into the

settlement with Gould. The plaintiffs thus allege a breach of the collective bargaining agreement by their employers [5] and a breach of the duty of fair representation by their union. A direct suit by an employee against an employer which alleges both breaches may be brought in federal court. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).[6]

■ Plaintiffs' theory of liability in this case is (1) that the value of the additional pension benefits that Gould provided to the current retirees under the settlement was substantially less than the value of the additional pension benefits that would have been available if Gould had deposited $570,-600, the amount determined to have been the underpayment for the period 1969–1974, into the pension trust fund, and (2) that if Gould had deposited the money, part of the difference would have gone to the vested employees. The linchpin of this the-

ory is that the higher interest rates that have prevailed since the late 1970's would have boosted the amount available for pension benefits. Rather than deposit the cash with the fund trustee, Gould agreed to guarantee specific additional pension benefits to the current retirees, with an expected value roughly equal to $570,600. In essence, Gould chose to assume the risk (or benefit) that a change in interest rates would alter the present value of the pension benefits guaranteed.

We are doubtful that this theory can be proved as a matter of practical economics. It may also be quite difficult for the plaintiffs to prove that Local 416 breached its duty of fair representation in entering the Settlement.[7] Since we are reviewing this case on a Fed.R.Civ.P. 12(b)(6) standard, however, and we cannot say that there is no set of facts which plaintiffs could prove that would entitle them to recover under this theory, we cannot affirm on the basis that the amended complaint failed to set

---

**5.** If the failure of Gould to pay the amount of the underpayment for the 1969–74 period into the pension fund violates the arbitration award, it amounts to a breach of the collective bargaining agreement, which obligates Gould to comply with arbitration awards.

**6.** Plaintiffs have also alleged a breach of fiduciary duty against the trustees of the pension fund, but not of the type that would allow them to sue their employer directly under our recent decision in *Struble v. New Jersey Brewery Employees Welfare Fund*, 732 F.2d 325 (3d Cir. 1984). Although they allege a breach of fiduciary duty by First Trust, the breach is not for failure to pursue remedies against Gould, and thus is not the type of breach necessary to allege a *Struble* cause of action. *Struble* allegations may not have been possible on the facts of this case, since it is unclear that either First Trust or the three-person board established by the collective bargaining agreement to . decide disputes under the Plan had the power to sue Gould, which is a prerequisite to ·a *Struble* cause of action. For whatever reason, plaintiffs in this case sought to pursue Gould based on its violation of the collective bargaining agreement rather than a separate trust agreement, and thus must bring their suit under *Vaca v. Sipes* rather than *Struble.*

**7.** It is true, of course, that $570,600 deposited at an interest rate of 12% will yield greater returns than the same amount deposited at a 6% rate.

It is simplistic, however, to think that this necessarily means the trust fund would have earned more over the period of high interest rates which began in the late 1970's. For instance, if the money had been deposited in long-term government obligations bearing a 6% rate in 1978, the fact that the same obligations issued today pay over 10% would not mean that the bonds purchased six years ago would now bear the higher rate. Although those obligations have an "effective" rate of return of 10% if purchased today, they cannot be sold for their face value, but only for a discounted price reflecting the low interest rate they bear. The income stream which would be produced by a 1978 investment in such bonds would be unaffected. In order to prove their theory, plaintiffs must prove one of two sets of facts: (1) given the actual investment practices of the fund, the higher returns would have been earned; or (2) that the actual investment practices of the trust fund were not reasonable on the facts as they appeared when the practices were adopted, and that had "reasonable" practices been adopted, the higher returns would have been earned. Neither Gould nor First Trust, however, can be held responsible for failing to anticipate the consequences of the economic policies of the last two administrations, or general economic trends.

forth a claim on which relief could be granted.

## B.

■ Having determined that the plaintiffs state a cause of action in their second amended complaint, we must next determine whether that cause of action is barred by our previous decision in this case. The issue in the earlier appeal was whether Local 416 was empowered to pursue the rights of the plaintiffs, as their collective bargaining representative, under the pension provisions of the collective bargaining agreement. We answered that question in the affirmative, holding that the plaintiffs were "bound" by the settlement negotiated by Gould and Local 416.

*Vaca v. Sipes* is an exception to the general rule of labor law that members of a collective bargaining unit cannot ordinarily sue individually to vindicate their rights under the collective bargaining agreement. Although we held that general rule of labor law applicable to plaintiffs' claims against Gould in the earlier appeal, we did not pass on the *Vaca v. Sipes* exception. Since the original complaint did not contain an allegation that Local 416 breached its duty of fair representation in settling the grievance, and since the case was before us on an unrelated certified question, that issue was clearly not before us.[8]

We therefore conclude that our prior holding in this case is not dispositive of the cause of action which plaintiffs attempt to assert in their second amended complaint.[9]

## C.

■ Gould and Local 416 entered into the agreement settling the grievance on March 15, 1977. This suit was brought on July 13, 1978. In *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that the six-month statute of limitations in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), which applies to unfair labor practice cases, was also applicable by analogy in *Vaca v. Sipes* cases.[10] If the *Del Costello* limitations period is applicable in this case, this suit must be dismissed as untimely.

The Court in *Del Costello* stressed the desirability of a uniform national limitations period in *Vaca v. Sipes* cases, and noted that the reasons justifying a relatively short limitations period for unfair labor practice suits—primarily the need to resolve disputes quickly to preserve labor peace—are also applicable in the *Vaca v. Sipes* context. Where the *Vaca v. Sipes* mechanism is being used to assert a claim against an employer for breach of a pension agreement, however, a second federal statutory period, that provided by the Employment Retirement Income Security Act, is arguably more appropriate. 29 U.S.C. § 1113(a)(2) provides for a three-year statute of limitations dating from "the earliest date (A) on which the plaintiff had actual knowledge of the breach ..." In this case, if the ERISA statute is applicable, the

8. At oral argument on the prior appeal, when plaintiffs' attorney attempted to assert the theory now before the court, Judge Aldisert refused to hear arguments directed at any issue not raised by the certified question, saying:

> You can address that to Judge Weis, you are not going to get anywhere with my [sic]. Okay. I'm going to consider precisely the question certified and only the question certified.

9. In our prior decision, we stated that the Settlement "merely implemented the arbitrator's award." 687 F.2d at 30. This statement was addressed to plaintiffs' argument that the Settlement amounted to independent negotiation, which Local 416 was arguably not empowered to engage in because it touched on plaintiffs'

"vested rights." We rejected that argument, because the arbitrator's decision had already limited those "vested rights" to the amount available in the pension fund when it rejected plaintiffs' claim for full funding. In this case, however, the plaintiffs raise a completely new and different challenge to the Settlement. They charge that the Settlement agreement substantively failed to effectuate the arbitrator's award, and that Gould therefore must pay additional amounts in order to comply with the award. This issue was not before us in the prior appeal.

10. *Del Costello* applies retroactively. *See Perez v. Dana Corp.,* 718 F.2d 581 (3d Cir.1983); *Scott v. Local 863, International Brotherhood of Teamsters,* 725 F.2d 226 (3d Cir.1984).

plaintiffs would not be barred from bringing suit.[11]

Since no statute is directly applicable, we must examine the relevant policies in deciding which limitations period should be applied. A *Vaca v. Sipes* suit normally involves an issue that is intertwined with the day-to-day relationship between management and labor. Speed and finality in the resolution of disputes are the most relevant policies in those situations. In pension dispute, however, that policy is less relevant. Even where the litigated dispute involves the funding of a pension plan involving an entity that remains in business, rather than an entity which ceases operation such as the Wilkening plant, the immediate effect of the dispute on the day-to-day labor-management relationship is slight. The funding issue involves the immediate interests only of retirees currently receiving benefits. In many cases, as here, the funding may be adequate to pay the present beneficiaries. The long-term interests of current employees are at stake, but delay in resolving disputes concerning those interests does not disrupt labor-management relations. Nor does the delay itself prejudice the interests of the employees.[12] The absence of an effect on their day-to-day working environment also makes it far more likely that employees will not be aware of their grievance immediately. These factors favor the application of a longer period of limitations. Section 1113 recognizes this, and provides for a three-year period in which to challenge breaches of fiduciary duty by the trustees of a pension plan.

Our reading of *Del Costello* is that it does not preclude the use of a different federal statutory period where the policies underlying the adoption of a six-month period in that case are inapplicable.[13] We believe that this is such a case. The primary holding of *Del Costello* is that, in *Vaca v. Sipes* suits, a uniform federal standard, rather than a "borrowed" state limitations period, is appropriate. The application of the six-month period provided by section 10(b) was based on the assumption that *Vaca v. Sipes* suits would involve issued relevant to day-to-day labor-management relations. We believe that there is a distinction between the implication of delay in resolving disputes over pension contribution issues and the implications of delay in resolving disputes over terms of a collective bargaining agreement that affect the day-to-day operations of a business. We also believe that this distinction justifies the use of a different limitations period. Accordingly, we hold that the three-year ERISA statute of limitations applies to this suit, in spite of the fact that the vested employees' suit against Gould's is predicated on a breach of the duty of fair representation by the Union rather than on a breach of a fiduciary duty by a pension fund trustee. Thus, the suit is not time-barred.

## IV.

Having determined that the plaintiffs' second amended complaint states a cause of action and is not foreclosed by our prior decision or the statute of limitations, we now turn to the factors which must inform a district court's discretion in deciding whether to allow a plaintiff to amend a complaint. As noted above, under the liberal pleading philosophy of the federal rules as incorporated in Rule 15(a), an

---

**11.** It is clear under the facts that the theory asserted in the amended complaint relates back to the date the original complaint was filed under Fed.R.Civ.P. 15(c), since it arises out of "the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading...."

**12.** Where a funding issue is disputed, as here, an appropriate use of prejudgment interest can eliminate any harm to the employees arising from the delay.

**13.** The Supreme Court has recently held that different policies are applicable in the resolution of pension disputes than are applicable in ordinary labor disputes. *Schneider Moving and Storage Co. v. Robbins*, —— U.S. ——, ——, 104 S.Ct. 1844, 1849, 80 L.Ed.2d 366 (1984) (presumption of arbitrability applicable in ordinary labor disputes is not applicable in pension fund disputes, since concern with labor peace that underlies presumption is not relevant where dispute arises between employee pension fund and employer).

amendment should be allowed whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a result of the delay. Although we recognize the breadth of the trial court's discretion in this area, the liberal pleading philosophy of the rules requires that a decision not to allow an amendment be justified by one of the factors listed above.

The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. *See Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982). The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants.

Defendants assert that the plaintiffs' delay in moving to amend the complaint was in "bad faith," but they offer no facts other than the delay in support of the contention. Although, under a theory analogous to laches, delay can itself be evidence of bad faith justifying denial of leave to amend, *see* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1488 at 443–44 (1971), there is nothing in the facts before us which indicates that this is such a case. Defendants point to no extrinsic evidence of bad faith, and, as noted below, plaintiffs had a colorable excuse for not amending earlier since the district court accepted the facial validity of their original legal theory. The district court made no finding that the plaintiffs were acting in bad faith in seeking leave to amend. Accordingly, we do not find that there was any bad faith justifying the denial of leave to amend.

Nor does it appear that the plaintiffs' failure to amend the complaint earlier in the litigation constitutes "undue delay." Plaintiffs originally asserted that they were entitled to litigate their claim for "full funding" of the Plan by Gould in federal court. This claim would have entitled plaintiffs to the entire amount of their pensions as specified by the Plan. The defendants moved for summary judgment, arguing that the plaintiffs were bound by the arbitration proceeding between Local 416 and Gould, which rejected the claim for full funding. The district court denied the motion for summary judgment but certified the question, and we reversed the holding that plaintiffs were bound by the arbitration. Plaintiffs had asserted their alternative theory, that the settlement agreement between Local 416 and Gould did not satisfy the arbitrator's award, in their briefs in the district court, and attempted to raise it on appeal, although this court declined to address it since it was not certified by the district court. Plaintiffs then tried to formalize their alternative contention by amending the complaint.

The facts of this case present an unusual situation. Where the legal theory of a complaint is rejected by the district court on a motion for summary judgment, but where an alternative theory has been raised which, on the same facts, is legally sufficient, it would be unusual for a district court not to allow the plaintiff leave to amend because of "undue delay." This case differs from the norm because the legal issue was decided by the court of appeals on a section 1292(b) interlocutory appeal rather than by the district court, but that difference should not affect the plaintiffs' ability to amend upon rejection of their original legal theory. The rationale of most cases rejecting "post-judgment" amendments—that the plaintiff should have raised the new theory before trial—is inapplicable. On the other hand, the rationale of the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), which held that the district court erred in not allowing plaintiffs an opportunity to allege a new legal theory after the original theory was dismissed on

a Fed.R.Civ.P. 12(b)(6) motion, is more closely analogous. *See also Wilburn v. Pepsi Cola Bottling Co.,* 492 F.2d 1288 (8th Cir.1974). Since amendment of a complaint is not unusual at the summary judgment stage of the case, *see* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1488 at 436 (1971), we would not characterize plaintiffs' failure to amend their complaint earlier as "undue delay."

Defendants also assert that they would be "prejudiced" if the plaintiffs are allowed to amend their complaint at this point in the litigation. They assert no particular prejudice except for additional counsel fees, but argue that there must be "finality" in the litigation process, and that allowing this amendment will delay the end of the case. Our disposition of this argument is governed by considerations similar to those discussed above. It is true that a plaintiff may not ordinarily amend his complaint after going to trial on one legal theory and losing. In this case, although the theory of the second amended complaint is based on the same facts as the original theory and could have been raised in the original complaint, the defendants have not had to litigate the facts of this case once, but rather have avoided litigating the facts by having the plaintiffs' legal theory rejected by this court in an interlocutory appeal. The defendants did not go to trial with the plaintiffs relying on one legal theory, only to have the plaintiffs try to change that theory in order to retry the same facts. They also have not obtained judgment on the merits of plaintiffs' new theory; the district court did not rule on that theory, and we specifically declined to address any other issues other than the one certified by the district court.

Neither is there anything on the facts of this case which demonstrates any particular prejudice as a result of allowing the plaintiffs to amend their complaint at this point in the proceedings. *See, e.g., Serrano Medina v. United States,* 709 F.2d 104 (1st Cir.1983) (eleventh-hour amendment adding new parties under conspiracy theory which would require extensive additional discovery would be prejudicial to defendants); *DeBry v. Transamerica Corp.,* 601 F.2d 480 (10th Cir.1979) (where plaintiff seeks to amend complaint to assert "new concepts and theories" that would require extensive additional discovery and create risk that trial scheduled for three months hence will have to be delayed, allowing amendment would be prejudicial to defendant). In light of the procedural posture of this case at the time of judgment and the failure of defendants to specify any particular prejudice, we hold that the defendants are not prejudiced by the plaintiffs' attempt to amend their complaint in order to assert a new legal theory at this point in the litigation.

Since we have concluded that the district court was not justified in rejecting the plaintiffs' motion for leave to amend their complaint by undue delay, bad faith on the part of the plaintiffs, or prejudice to the defendants, we cannot hold that the decision to deny leave to amend was within the discretion of the district court. Accordingly, the district court erred in not allowing the plaintiffs to reopen the judgment and in not granting them leave to amend their complaint.

### V.

In sum, we hold that: (1) the plaintiffs' complaint states a *Vaca v. Sipes* cause of action against Gould for failure to comply with an arbitrator's award to make additional contributions to a pension plan; (2) the plaintiffs' claim is not barred by the statute of limitations, since the three-year period of 29 U.S.C. § 1113(a)(1), rather than the six-month period of 29 U.S.C. § 160(b), is applicable to a *Vaca v. Sipes* claim against an employer for failure to make required contributions to a pension plan; (3) the plaintiffs' claim is not precluded by our resolution of the previous appeal in this case; (4) our scope of review over the district court's decision to deny plaintiffs' motion to reopen the judgment and amend their complaint is plenary if the denial is based on a legal error, and otherwise is for abuse of discretion; and (5) under the cir-

cumstances of this case, where the defendants have failed to show bad faith, undue delay, or prejudice, and where the plaintiffs' proposed amended complaint states a legal theory that is both sufficient to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6),[14] and has not been decided on the merits by the judgment plaintiffs are seeking to reopen, it was an abuse of discretion for the district court to deny plaintiffs' motion to reopen the judgment and amend the complaint.

Accordingly, the judgment of the district court will be vacated, and the case remanded for proceedings consistent with this opinion.

---

**14.** The rule in this circuit is that affirmative defenses, such as the statute of limitations and res judicata, can be asserted on a motion to dismiss. *Williams v. Murdoch,* 330 F.2d 745, 749 (3d Cir.1964). Even if the defenses had to be raised in an answer, rather than on a motion to dismiss, the test of "legal sufficiency" would not be affected.