ROSENN, Circuit Judge,
dissenting.
In the struggle to develop their land in Buckingham Township, Pennsylvania, the Lindquists encountered severe resistance from Township officials. The officials frustrated the Lindquists’ efforts and wasted their time and resources. Because the majority holds that the Township’s conduct is not sufficiently “conscience shocking” to constitute a violation of the Lindquists’ substantive due process rights, I respectfully dissent.[6] Additionally, because the legal standard for this substantive due process claim changed while the District Court deliberated in this case, I believe the claim should be remanded so that the Lindquists may have the opportunity to present evidence that is now relevant under the new heightened standard. *779 Lastly, I disagree with the majority’s interpretation of our circuit’s case law regarding a plaintiffs ability to amend a complaint. I believe that because the District Court’s analysis of the Lindquists’ motion to amend failed to articulate any undue burden on the court or prejudice to the non-moving party, denial of the motion was an abuse of discretion.
I.
The majority has explained the basic sequence of events that occurred between the Lindquists and the Township during the six year development application ordeal. I write to supplement the factual account, and to explain several points of divergence between us.
A. The Township’s Misconduct
Even though the standard for this substantive due process claim changed from “improper motive” to “shocks the conscience” while the District Court deliberated in this case, the District Court still acknowledged in its opinion that the Township “may have acted with an improper motive toward the Lindquists and their representatives.” Although improper motive is no longer sufficient to prove a substantive due process violation, identifying an improper motive is a factor in the conscience shocking behavior of a state actor. The Court of Common Pleas of Bucks County candidly addressed the Township’s improper motive, acknowledging that “the Township proudly admits that it would like to preserve the Lindquist property.” The Township’s motivation to preserve the Lindquists’ land was improper because under the zoning and land-use ordinances in effect at the time of the Lindquists’ initial application, the cluster subdivision developments they sought were allowed on the Lindquists’ land as a “by-right” use.
As the majority opinion acknowledges, the Township Board of Supervisors (the “Board”) requested that the Lindquists forego their by-right use and pursue an alternate plan favored by the Board, in exchange for assurances that the Board would grant the required SALDO waivers and process the plans under the zoning ordinances as amended December 13, 1995 (the “1995 ordinances”). However, after inducing the Lindquists to surrender their by-right use of the cluster development, the Board rejected the plan revisions in June of 1997 and denied the original plans in Resolution No. 1533. This action forced the Lindquists to resubmit new plans to be reviewed now under the zoning ordinances as amended in 1997. This action was significant because the 1997 amendments to the ordinances prohibited several of the items in the Lindquists’ original plans, and strategically removed the by-right use. This action set the tone for a series of other bad faith maneuvers launched by the Township against the Lindquists.
In response, the Lindquists filed suit against the Township in the Court of Common Pleas of Bucks County. The parties agreed to a settlement, which was entered as a court order (the “Court Order”) requiring that the Township withdraw its denial of the plans and permit the Lind-quists to submit revised plans to address the comments raised by the Township.
The majority here asserts that the settlement did not address how many times the Lindquists would be allowed to submit further revised plans after the original resubmission. However, the Court Order clearly stated that “[t]he Board will process and review the Revised Plans for Phase I, and any revisions thereto in accordance with the Zoning Ordinance and SALDO, as they existed on December 13, 1995.” (emphasis added) So, while the Court Order may not have explicitly stated *780 how many revisions would be allowed, it clearly anticipated the need for multiple revisions and required that any revisions would be considered under the 1995 ordinances.
The Board realized that as long as the Lindquists were cooperating with the Township Planning Commission and consultants to revise and improve the original plans, the Court Order required that the Board consider the plans under the 1995 ordinances, and this would eventually lead to an approval. Therefore, the Board adopted a strategy to work around the Court Order almost immediately after the Order was signed. For example, the District Court acknowledged that “[a]t the Board’s direction, the Planning Commission had treated the revised plans as a new filing that did not relate back to the earlier submission.” Even in its pleadings before the Court of Common Pleas, the Township admitted that it attempted to reject the revised Phase I subdivision plan because it knew that the Lindquists “were getting closer to compliance with the Township Ordinances and wanted to reject the Revised Phase I Subdivision Plan before the Lindquists submitted any further revised plans.”
Furthermore, during deposition, the Township Manager, Deborah Rendon, admitted the following:
Q: So they acted — the Board of Supervisors acted to deny the revised subdivision application before the Lindquists had an opportunity to submit further plans to the Township, even though the [Court Order] specifically permitted further revised plans to be submitted, right?
A: Yes.
The Township argues that after the Court Order was signed in 1997, it proceeded in good faith, as evidenced by a series of six meetings between the Lind-quists and the Planning Commission aimed at reaching an agreement on the plans. To begin, this argument is undercut by the Township’s admission that it rejected the plans because the Lindquists were getting closer to compliance. Furthermore, the Township’s claim of good faith is absurd, in light of the shameless tactics on which the Township embarked in its effort to reject the plans.
As the majority recognizes in its footnote 2, the Board was the only Township entity empowered to approve the Lind-quist plans. Any amount of progress made between the Lindquists and the Planning Commission was irrelevant if the Board had predetermined that it would not provide its approval. On July 22, 1998, when the Township’s deadline for taking action on the plans was fast approaching, the Board rejected a routine request from the Lindquists to submit further revised plans and hastily enacted Resolution No. 1598 rejecting the plans. The District Court noted that “the Lindquists had no prior knowledge that the Board was set to act on the plan on this date.” (D. Ct. Op. at 12) In its haste, the Board actually denied the wrong plans, and the deadline for action on the Lindquists’ most current submission passed. In an attempt to correct its mistake, the Board adopted Resolution No. 1599 rejecting the most current plans.
In the meantime, the Lindquists submitted a revised set of plans and argued that the Board had violated the 1997 Court Order by not considering them to be revised plans subject to consideration under the 1995 ordinances. Alternatively, the Lindquists argued that if the plans were in fact a new submission, they were entitled to a 90-day statutory review period including review letters by the Township’s consultants. (D. Ct. Op. at 13) The Board disagreed, and less than one month after *781 receiving the latest submission, the Board enacted Resolution No. 1600 denying Lind-quist’s most recent submission without Ml review. This denial was issued on the same day that the Township consultants submitted their review letters, leaving the Lindquists no conceivable opportunity to respond to the comments. (D. Ct. Op. at 13)
Throughout this process, the Township flagrantly violated its own ordinances and procedures, as well as the 1997 Court Order. To further underscore the Board’s bad faith and arbitrary approach, the first 57 reasons for denial stated in Resolution No. 1600 in August 1998 were the same reasons verbatim as those listed in the first denial filed in June of 1997, Resolution No. 1533. (D. Ct. Op. at 13) However, in the intervening 14 months, the Lind-quists had addressed all of those issues. Thus, it became clear that the Board did not actually evaluate the Lindquists’ plans, but arbitrarily denied them. The Township’s claim that the Lindquists were provided with a meaningful review process and access to the Planning Commission to negotiate acceptable plans is disingenuous. The Township actually wasted the Lind-quists’ time and resources in seeking an approval when the Township knew that it had no intention of ever granting it.
B. Conscience Shocking Standard
In United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir.2003), this court adopted a new heightened standard for substantive due process cases in the land-use context. “Improper motive” was no longer the standard; the new standard was conduct that “shocks the conscience.” Therefore, it is no longer sufficient for a developer to prove that a state actor intentionally worked against the developer’s interests in violation of state laws or ordinances. The developer must now show that the state actor’s behavior was so egregious that it was “shocking.” Despite the inherently subjective nature of this inquiry, the courts have attempted to set some guiding standards in this area. For example, when a suit is brought against a state actor challenging conduct in response to an emergency situation, “more culpability is required to shock the conscience to the extent that the state actors are required to act promptly under pressure.” Schieber v. City of Philadelphia, 320 F.3d 409, 419 (3d Cir.2003). Conversely, when officials have time to make unhurried judgments, as was true in this case, indifference and “protracted failure even to care” may be truly conscience shocking. Leamer v. Fauver, 288 F.3d 532, 547 (3d Cir.2002).[7]
The First Circuit has explained that “even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation.” PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir.1991) (on petition for rehearing). Furthermore, “mere bad faith refusal to follow state law in such local administrative matters simply does not amount to deprivation of due process *782 where the state courts are available to correct the error.” Chiplin Enterprises v. City of Lebanon, 712 F.2d 1524, 1528 (1st Cir.1983).
In United Artists, this court agreed with the Court of Appeals for the First Circuit that the federal courts should not sit as a “zoning board of appeals,” particularly when state courts are available for such a task. 316 F.3d at 402 (citing Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir.1982)). I, of course, agree. However, in this case the Lindquists sought relief in the state courts, but the Township blatantly ignored the state Court Order. The Township persisted in arbitrary and abusive treatment toward the Lindquists. Our court has observed that “‘the core of the concept’ of due process is ‘protection against arbitrary action’ and that ‘only the most egregious official conduct can be said to be ‘arbitrary in the constitutional sense.’ ” United Artists, 316 F.3d at 399 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 845-46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). In my view, the Township deliberately played cat-and-mouse with the Lindquists, wasting their resources and time for a half-dozen years, arbitrarily denying multiple versions of their applications for a development to which they were initially entitled as a matter of right. To this arbitrary and egregious behavior, the Township added insult to injury by flagrantly disobeying the county Court Order.
When a township lures one of its landowners to give up a right established by township ordinance, induces him to comply with its demands for development approval only to have such compliance arbitrarily rejected, deliberately engages in a frustrating pattern to waste the landowner’s resources and time over a period of years, and then flagrantly disregards the Order of a state court, such egregious conduct “shocks the conscience” in a constitutional sense. Under such circumstances, I disagree with the majority and the District Court; a federal court should grant relief.
II.
The Lindquists also claim that the District Court abused its discretion by denying their attempt to introduce evidence regarding the Yerkes/Orleans application, a neighboring land owner’s application for a similar development project that was approved by the Township without any of the strong resistance encountered by the Lindquists. The majority finds no abuse of discretion because the evidence does not involve the Township’s treatment of the Lindquists, and because it could not aid the Court in determining whether the treatment “shocked the conscience.” I do not agree.
When the District Court ruled on this evidence at trial, it was still operating under the “improper motive” standard. The Court clearly stated that favorable treatment of a similar development application would not be relevant to determine if there was “improper motive” towards the Lindquists’ application. However, after the trial concluded, but before issuing its decision, this court issued its decision in United Artists, changing the standard of review to “shocks the conscience.” Although evidence relevant to a determination of an “improper motive” might have been limited to the interaction between the Lindquists and the Township, “shocks the conscience” is a much broader standard. Under this standard, therefore, a wider range of evidence is relevant.
In United Artists, we noted that “the measure of what is conscience-shocking is no calibrated yard stick.” 316 F.3d at 399 (quoting Lewis, 523 U.S. at 847). Rather, “conduct that is sufficiently egregious to *783 shock the conscience varies depending on the context. ” United Artists, 316 F.3d at 399 n. 5 (emphasis added). Under this standard, evidence of the Township’s treatment of a similar application much more favorably than the Lindquists’ and with much greater dispatch could provide important information and perspective to show “conscience shocking” conduct.
The Lindquists assert that denying the multiple iterations of their plan outright, rather than approving it with conditions, was not the standard practice for the Township. The Lindquists proffer that the Yerkes/Orleans application for a cluster subdivision development submitted in January 1997 was almost identical to the Lindquists application. The Township approved the Yerkes/Orleans application after only six months of review with 276 conditions and comments. In contrast, the Lindquists’ plans were denied after four years of review based on 60 comments. After reviewing Township records, the Lindquists determined that the same 60 reasons listed to justify denial of the Lind-quists’ application were also listed as conditions for approval in the Yerkes/Orleans application. If the Lindquists could substantiate these claims with reliable evidence, I believe that the evidence would be an important relevant factor in the fact finder’s determination with the other evidence referred to above, whether the Township was acting with the requisite level of capriciousness that “shocks the conscience.”
We have acknowledged that “a change in legal standards may warrant the reopening of a case where additional testimony would be pertinent to the change of law.” Skehan v. Board of Trustees of Bloomsburg State College, 590 F.2d 470, 479 (3d Cir.1978) rev’d on other grounds by Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir.1985). Precedent in this circuit and simple fairness require that this case be remanded to allow the Lindquists the opportunity to present all of their evidence that would now be relevant under the new standard established in United Artists.
III.
The District Court denied the Lind-quists’ motion to amend their complaint to add an equal protection claim. The District Court denied the motion on the basis of “undue delay.” The majority here advances an abbreviated analysis of this issue, which in my view does not comport with the clear precedent in our circuit.
The majority cites to Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir.1984), which provides a thorough explanation of the standard for review for a denial of a motion to amend. Adams explained that the mere passage of time will not require a motion to be denied; the delay must be deemed “undue” by either placing a burden on the court or causing prejudice to the opposing party. Id. The Adams opinion further clarified that questions of delay and bad faith require inquiry into the moving party’s motives for not amending the complaint earlier, and questions of prejudice require a focus on the effects on the non-moving party. Id.
The majority asserts that when the District Court reviewed the Lindquists’ explanation for failing to amend their complaint earlier in the proceedings, the Court was actually following our directive in Adams by exploring the Lindquists’ motives. I do not think this is so. First, the District Court considered the Lindquists’ explanation for the delay in their motion to amend, but did not actually explore any improper motivations. Second, even if the District Court’s brief inquiry into this matter could be considered a focus on motivations, the District Court did not find that Lindquists *784 harbored any bad faith or improper motivations that would justify denial of the motion.
The Lindquists explained that they requested documentation of the Yerkes/Orleans application during discovery, and the Township failed to provide the records. Therefore, the Lindquists did not learn about the preferential treatment afforded to the Yerkes/Orleans application until after discovery when they uncovered these documents themselves from public records. Rather than criticizing the Township for any discovery violation, the District Court blamed the Lindquists for not seeking the public records sooner, and failing to file a motion to compel discovery. It is unmistakable from the District Court’s terse order denying the motion that the Court did not actually inquire into the Lindquists’ motivation for delay in amending their complaint. Nor did the Court find any improper motivation by them. Rather, the District Court concluded that the Lind-quists could have discovered the information sooner, and denied the motion for an apparent lack of diligence.
This court has held that “prejudice to the non-moving party is the touchstone for the denial of an amendment [of a claim].” Cornell & Co. v. Occupational Safety & Health Review Comm’n, 573 F.2d 820, 823 (3d Cir.1978) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)). Furthermore, “the obligation of the trial court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant’s reason for delay in asserting the motion.” Coventry v. United States Steel Corp., 856 F.2d 514, 520 (3d Cir.1988) (emphasis added). In this case, the District Court did not articulate any prejudice to the Township or burden on the Court. The Court’s explanation of actions that the Lindquists could have taken to obtain the evidence sooner does not amount to an articulation of burden or prejudice. Furthermore, any cursory inquiry into the Lindquists’ “motivation” does not satisfy the Court’s obligation in this matter, particularly when the Court failed to find any bad faith motivation. In my view, the District Court abused its discretion in denying the Lind-quists’ motion to amend.[8]
IV.
In conclusion, our opinion in United Artists brought this circuit in line with most other circuits by adopting the “shocks the conscience” standard for substantive due process claims in a land-use setting. However, if substantive due process claims are to remain viable under this standard, we must be willing to recognize when a state actor’s conduct is so egregious and arbitrary so as to violate the requirements of the Fourteenth Amendment. “Shocks the conscience” is an extremely difficult standard to meet, but it is not insurmountable. I believe that the evidence in this case shows that the Township purposefully obstructed the Lindquists’ right to pursue a legitimate use of their land, and consistently and systematically abused its authority and discretion. Not only did the Township violate its own laws, but when the Lind-quists sought relief in the state court, the Township frustrated that relief by violat *785 ing the county Court Order. At this point, I believe that the Township violated the Lindquists’ due process rights.
Furthermore, even if reasonable minds may differ regarding what shocks their conscience, I believe that the District Court abused its discretion by denying the Lindquists’ motion to amend their claim, and by failing to admit evidence of the Township’s more favorable treatment of other land-use applicants. I would reverse the District Court on both of these grounds, remand the case to permit the Lindquists to pursue both equal protection and substantive due process claims, and allow the evidence of the Yerkes/Orleans application.
Regarding the other issues raised on appeal, I would concur with the majority that “shocks the conscience” is the appropriate standard, and that preclusive effect should not be given to the findings of the county court. I agree that the District Court did not abuse its discretion by denying the Township and Board’s motion for attorneys’ fees.

. The majority defers heavily to the District Court's finding after a six day trial that nothing in the facts “was so egregious as to be 'conscience shocking,’ ” and fails to find error in the District Court’s reasoning or ruling. (Maj. Op. at 770-71) While clear error review applies to the District Court's findings of fact, the application of those facts to the “conscience shocking” standard is a legal question that we review de novo. See, e.g., Srein v. Frankford Trust Co., 323 F.3d 214, 220 (3d Cir.2003) (discussing the "mixed” standard of review). I take no exception to the facts as described by the District Court, and I also find the facts described by the Court of Common Pleas of Bucks County after its lengthy trial to be informative. However, after finding the facts, the District Court offered little analysis, and simply stated in conclusory fashion that these facts did not rise to the "shock the conscience” standard. I disagree with both the majority and the District Court because in my opinion, the facts presented in this record display arbitrary and malicious conduct on the part of the Township that rises to a conscience shocking level.

. The majority at p. 775 distinguishes Learner because it deals with a liberty interest in a prison setting, where the conscience shocking standard may be more easily satisfied. Yet, state actors in a prison setting share a commonality with municipal zoning boards; they both maintain complete control over their subjects’ interests and may abuse their positions of power if they fail to follow their designated rules and regulations. In both instances, the Constitution may be the only check on abusive practices, regardless of whether it is a liberty or a property interest at stake. When state actors show egregious indifference, bordering on malfeasance and contempt in my view of this case, Constitutional protection is appropriate.

. Furthermore, as a prudential matter, I believe that an equal protection claim would be preferable in this case because it avoids the cumbersome and subjective "shocks the conscience” analysis. As Justice Scalia noted in a concurring opinion in City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188, 200-01, 123 S.Ct. 1389, 155 L.Ed.2d 349 (2003), more specific constitutional claims such as equal protection are preferable to generalized substantive due process claims.