## In re LIBERTY LOGISTICS, LLC, Debtor.

Liberty Logistics, LLC, Plaintiff,

v.

Consolidated Container Company, LLC, Defendant.

Bankruptcy No. 04–13890 SR.
Adversary No. 04–401.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 2, 2005.

Thomas Suddath, Esquire, Jerrold V. Moss, Esquire, The Bellevue, Philadelphia, PA, for Plaintiff.

Laurie A. Krepto, Esquire, Montgomery, McCracken, Walker & Rhoads, George Conway, Esquire, Office Of The U.S. Trustee, Philadelphia, PA, for Defendant.

**OPINION**

STEPHEN RASLAVICH, Bankruptcy Judge.

## I. *Introduction*

Before the Court is Plaintiff Liberty Logistics, LLC's ("Liberty") Motion for Leave to Amend Complaint under Fed. R. Bankr.P. 7015. In its Motion, Plaintiff seeks to amend the Complaint to include a claim for damages based on lost profits from operations. Defendant Consolidated Container Company LLC ("Consolidated") opposes the Motion. The Court held an expedited hearing on this matter on January 20, 2005. For the reasons discussed below, the Court will deny Plaintiff's Motion.

## II. *Procedural Background*

Liberty filed this breach of contract action against Consolidated on April 15, 2004. Discovery closed October 15, 2004, and trial is scheduled to begin March 16, 2005.

In the Complaint, Liberty alleges breach of contract regarding transportation services it agreed to provide Consolidated out of Consolidated's Verona, Pennsylvania facility. Allegedly in reliance on the contract, Liberty leased for a three-year term 160 trailers that it then intended to rent to Consolidated for a profit. *See Complaint,* at ¶ 15. In the Complaint, Liberty seeks as its sole basis of damages the profit lost on the rental of those trailers. The amount of that claim totals $625,069.00, a figure calculated by multiplying the weekly rental fee times the number of trailers times the total number of weeks remaining on the contract, minus the cost of leasing the trailers for the same period.

At no time prior to the close of discovery on October 15, 2004 did Plaintiff raise any additional damages claim. In fact, in response to a specific discovery request by Defendant concerning Plaintiff's alleged damages, Plaintiff made no mention of any claim other than lost profits from the lease of the trailers.

On November, 5, 2004, Plaintiff filed its pretrial disclosures in this case. In the disclosures, Plaintiff again failed to indicate any damage claim other than lost profits from the lease of the trailers.

On December 6, 2004, the parties' counsel participated in a conference call with the Court concerning Defendant's motion to extend the trial date. Not only did Plaintiff again fail to mention an additional damage claim but Plaintiff opposed Defendant's request for more time, arguing that it would be prejudiced by a delay of the proceedings.

Now, just two months prior to the start of trial-and three months following the close of discovery-Plaintiff seeks leave to

amend the Complaint to assert an entirely new damage theory based on lost profits related to the *operation* of its business. Under this new theory, damages would include lost profits from Plaintiff's provision of transportation services (i.e., tractors and drivers) to move the trailers from Defendant's Verona facility to its customers' locations. Plaintiff therefore now seeks to recover lost profits from both its provision of trailers *and* its provision of transportation services. Through this proposed amendment, Plaintiff seeks to increase its total damages claim by over one-third, adding an additional $354,915.00 in damages. On December 10, 2004, Plaintiff provided Defendant with a document titled "Calculation of Damages," which identified this new damages claim. At the January 20, 2005 hearing, Plaintiff had the damages document, identified as Schedule B, marked as an exhibit. Schedule B identifies nine categories of Plaintiff's operating expenses and projected net income from transportation services for the remainder of the contract.

Plaintiff's explanation for seeking leave to amend this late in the proceedings is that it did not become "aware" of the extent of Plaintiff's damages until shortly before December 10, 2004. According to Plaintiff, it was not until early December when it began to assess any losses from its transportation services-losses that would have had to offset any claimed profits from the lease of the trailers-did it realize that it actually had lost profits from operations.

In response to Plaintiff's Motion, Defendant argues that dilatory motive, undue delay and unfair prejudice should act as a bar to amendment.[1]

## III. *Discussion*

■ Amendment of pleadings is governed by Fed. R. Bankr.P. 7015, which incorporates Fed.R.Civ.P. 15. Subsection (a) of Rule 15 provides in pertinent part:

(a) **Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. *Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.*

Fed.R.Civ.P. 15(a) (emphasis added).

■ Because Defendant already filed its answer to Plaintiff's Complaint, leave of court to amend is required. Rule 15(a) states that "leave shall be freely given when justice so requires." *Id.* However, if there exists an apparent or declared reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of the amendment," leave to amend should be denied. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Here, Defendant argues that Plaintiff has exhibited dilatory motives, there has been undue delay, and amendment will result in undue prejudice to Defendant. The Court agrees with Defendant.

---

1. In addition, Defendant argues that Plaintiff's failure to attach a draft amended pleading to its Motion is also fatal to its request. *See Lake v. Arnold,* 232 F.3d 360, 374 (3d Cir.2000). For this reason, in addition to the reasons set forth *infra,* the Court will deny Plaintiff's Motion.

The record demonstrates that Plaintiff has acted with dilatory motives. Plaintiff's asserted reason for the delay is lack of diligence. Plaintiff claims that it just did not realize it had this claim for lost operational profits until it began to assess in December 2004 whether there would be any offset to its claim regarding the trailers. Plaintiff's own counsel's testimony, however, makes clear that the true reason for its delay was its misplaced confidence in a settlement of this case. Jerrold Moss, Esquire, counsel for Plaintiff, testified as much before this Court on January 20, 2005. See N.T., at 6 ("... when this case was filed, I believe on April 15th, tax day of last year, as we approached the-got to the discovery and approached the time for trial, it became rather apparent that this case was not going to be [settled] [sic], as I naively thought it would be."). Thus, it is evident that Plaintiff rested its hope on settlement of this matter rather than fully and properly preparing its case and prosecuting its claims. With settlement failing to occur, Plaintiff now seeks to "raise the stakes" of its claims by proffering a new damages theory, just weeks before trial, that increases its total damage amount by over one-third. The Court will not permit amendment in light of these dilatory and tactical motives.

■■■ Moreover, the Court finds that there has been undue delay. While delay alone is an insufficient ground to deny leave to amend, "at some point the delay becomes 'undue,' placing an unwarranted burden on the court, or becomes 'prejudicial,' placing an unfair burden on the opposing party." See Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir.2001) (quoting Adams v. Gould Inc., 739 F.2d 858, 863 (3d Cir.1984)). Delay may become undue when the movant had numerous past opportunities to amend the complaint. Id. Thus, the question of delay requires the court to focus on the movant's reasons for not amending sooner. Id.

In the instant case, had Plaintiff properly prepared its case and focused on the harm it allegedly suffered, it would have had ample opportunity to amend the Complaint in a timely fashion had it been necessary. Instead, Plaintiff's request comes three months after the close of discovery, nine months after filing of the Complaint, and almost two years after the alleged breach. Despite the egregious delay, Plaintiff's only explanation is inattention to its damages claim-an explanation that, as discussed above, was really due to its hopes of settlement. The Plaintiff's delay in this case goes well beyond acceptable bounds of tardiness. For these reasons as well, the Court finds that amendment is not warranted.

Finally, the Court also finds that allowance of amendment will cause unfair prejudice to Defendant. The issue of prejudice requires the court to focus on the hardship on defendant if amendment were permitted. Cureton, 252 F.3d at 273. Unlike the formulaic calculation of damages set forth in the Complaint concerning lost rental profit on the trailers, Plaintiff now seeks to add an intricate and complicated analysis of lost profits stemming from the operation of its business. Under Pennsylvania law, lost profits for new business must be proven with "reasonable certainty" and with more persuasive evidence than is required in the case of ongoing business. See National Controls Corp. v. National Semiconductor Corp., 833 F.2d 491, 495–96 (3d Cir.1987). This standard allows for increased scrutiny of movant's records and projections of expenses.

Here, the vetting of Plaintiff's new theory of damages would lead to significant new preparation by Defendant. Defen-

dant would first have to obtain discovery of Plaintiff's pertinent operational data, including revenues and expenses. The nine categories of expenses set forth in Schedule B-wages, office/clerical wages, truck rental, insurance, fuel costs, tires, repairs and maintenance, tolls and telephone-are indicative of the breadth of records that Defendant would need to discover and analyze. Taking the above data, Defendant would then have to parse out what costs were attributable to operations at Consolidated's Verona facility and what were attributable to other locations. Further, Defendant would have to isolate which costs were associated with the dedicated lane operations and which with the non-dedicated lanes. Defendant has also indicated that it would need to retain a forensic accountant to cull through and properly analyze the above data and to accurately forecast operational costs for the remainder of the contract. This poses a laborious, expensive and time-consuming burden on Defendant. The Court will not impose such a burden on Defendant just weeks before trial.

## IV. *Conclusion*

For all of the reasons set forth above, the Court finds that dilatory motives, undue delay and unfair prejudice to the Defendant all warrant denial of Plaintiff's request for amendment at this late stage of the proceedings. Accordingly, the Court will deny Plaintiff's Motion for Leave to Amend its Complaint.

### ORDER

AND NOW, upon consideration of Plaintiff Liberty Logistics, LLC's ("Liberty") Motion for Leave to Amend Complaint, and opposition thereto, and after a hearing held thereon on January 20, 2005, it is hereby:

ORDERED, that for the reasons stated in the accompanying Opinion, the Motion is DENIED.

